UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
JOHN JOSEPH BENGIS, an individual,  :
                                     :
                    Plaintiff,       :  08 CV 4237 (JSR)
        v.                           :
                                     :  ECF CASE
RICHARD MOSS, ESQ., an individual, and :
KRAMER LEVIN NAFTALIS & FRANKEL LLP, : **DECLARATION IN SUPPORT OF**
                                     :  **MOTION TO DISMISS**
                    Defendants.      :
--------------------------------------------------------------- x

THOMAS H. MORELAND declares as follows:

1. I am an attorney admitted to practice law before this Court and a member of the law firm of Kramer Levin Naftalis & Frankel LLP, attorneys for the defendants in this action. I make this declaration in support of the motion by defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint with prejudice as barred by the three-year statute of limitations provided by New York Civil Practice Law and Rules § 214.6.

2. Annexed as Exhibit A is a copy of the Complaint filed in this action on May 5, 2008, by plaintiff John Joseph Bengis. The Complaint pleads four claims, labeled negligence/legal malpractice, negligent misrepresentation, breach of contract and breach of representations and warranties, all based on the allegedly deficient nature of defendants' legal service in representing plaintiff in connection with a patent application. As explained in defendants' accompanying Memorandum of Law, all of these claims are barred by CPLR § 214.6, which provides a three-year statute of limitations for any action "to recover damages for malpractice . . . regardless of whether the underlying theory is based in contract or tort."

3.   Plaintiff does not allege any conduct on defendants' part after September 17, 2002, the date on which the patent issued. (Exh. A. ¶ 21). Plaintiff seems to allege that he did not discover defendants' malpractice – the alleged failure to perform a "proper and thorough patent search – until 2007. (Exh. A. ¶¶ 27, 31). However, the law is clear that the statute of limitations on a legal malpractice claim begins to run when the allege malpractice occurs, i.e., here not later than September 17, 2002, and not when it is later discovered. Accordingly, all of plaintiff's four claims, each of them a malpractice claim however labeled, were barred by CPLR § 214.6 as of September 17, 2005.

4.   For the reasons set forth in the accompanying memorandum of law, the Court is requested to dismiss the Complaint with prejudice.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 13, 2008

                        KRAMER LEVIN NAFTALIS & FRANKEL LLP

                        /s/ Thomas H. Moreland
                        Thomas H. Moreland (TM-3927)
                        1177 Avenue of the Americas
                        New York, New York 10036
                        (212) 715-9100
                        Attorneys for Defendants

To:   Panagiota Betty Tufariello, Esq.
      Intellectulaw, The Law Offices of P.B. Tufariello, P.C.
      25 Little Harbor Road
      Mt. Sinai, New York 11766
      Attorney for Plaintiff

JUDGE RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

08 CV 4237

| | |
|---|---|
| JOHN JOSEPH BENGIS, an individual, <br><br> Plaintiff, <br><br> v. <br><br> RICHARD MOSS, ESQ., an individual, and KRAMER LEVIN NAFTALIS & FRANKEL LLP a Limited Liability Partnership <br><br> Defendants | Case No. <br><br><br> COMPLAINT <br> AND <br> DEMAND FOR JURY TRIAL |

NOW COMES Plaintiff, JOHN JOSEPH BENGIS, by and through his undersigned attorneys, INTELLECTULAW℠, The Law Offices of P.B. Tufariello, P.C., on their behalf and for their Complaint against the above named Defendants, RICHARD MOSS, ESQ., and KRAMER LEVIN NAFTALIS & FRANKEL LLP, alleges and avers as follows:

## SUMMARY OF CLAIMS

1. This is an action for legal malpractice, breach of contract and breach of representations and warranties, seeking to redress the harms caused by defendants RICHARD MOSS, ESQ., and KRAMER LEVIN NAFTALIS & FRANKEL LLP. John Joseph Bengis LLC (hereinafter "Mr. Bengis") retained Richard Moss Esq., a New York licensed attorney but employed by Kramer, Levin, Naftalis & Frankel LLP and practicing law in Kramer, Levin, Naftalis & Frankel LLP's New York City Office to provide legal expertise and advice concerning a valuable cosmetic container invented by Bengis.

2. Defendants' negligence and malpractice, breach of contract, and breach of representations and warranties, occurred when, despite making affirmative

representations to the contrary. Defendants failed to conduct a proper prior art search, and failed to provide accurate and correct information regarding the patentability of the valuable cosmetic container invented by Bengis, prior to the Bengis' filing of a patent application for his valuable cosmetic device.

3. Defendants' negligence and negligent representations regarding the patentability of Bengis' valuable cosmetic device materially damaged Bengis, who reasonably, justifiably and foreseeably relied on Defendants' legal expertise and representations that his valuable cosmetic container was in fact patentable. Upon information and belief, as a result of Defendants' wrongdoing, Bengis has suffered at least $500,000 in actual and consequential damages for which recovery is sought herein.

## PARTIES

4. Plaintiff JOHN JOSEPH BENGIS is an individual residing at and having a regular and established place of business at 33 Barker Avenue, No. 2A, White Plains, New York 10601.

5. Upon information and belief, defendant Kramer, Levin, Naftalis & Frankel, LLP is a New York registered limited liability partnership with its principal place of business in the State of New York, located at 1177 Avenue of the Americas, New York, NY 10036. Kramer, Levin, Naftalis & Frankel LLP is liable for the acts of Richard Moss Esq. by virtue of the acts of the principles of respondeat superior.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1338 (a) since proof of patent invalidity under the Patent Laws of the United States, 35 U.S.C. § 101 *et seq.* is a necessary element of Bengis's Legal Malpractice Actions set forth herein below.

7. Personal jurisdiction over defendants is vested in this Court in view of the fact that upon information and belief, Defendants are a New York state domestic entity and residents, and because the claims alleged arise from acts and conduct Defendants purposefully directed towards Bengis, a New York resident.

8. Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391 since a substantial portion of the harm sought to be avoided, and a substantial part of the events and omissions giving rise to the claims asserted herein, occured within this district.

## BACKGROUND

9. Late in the summer of 1999, Bengis developed a device known as a cosmetic container with interchangeable attachments (hereinafter "the Cosmetic Container"). It includes a lipstick compartment having a base that is adapted to removably engage one of a set of interchangeable attachments. Such attachments can be a receptacle for a second cosmetic container provided with an applicator, as for example a lip gloss container; a cosmetic pencil sharpener; or a receptacle for holding an aqueous bubble forming solution provided with an appropriate bubble blowing device.

10. Specifically, the base of the lipstick compartment is provided with a an attachment mechanism, i.e. a partial bore, which is adapted to removably engage any one of the interchangeable attachments. The interchangeable attachments in turn are provided with an outer surface having splines or the like, for grippingly engaging the inner surface of the partial bore at the base of the lipstick compartment, to achieve a friction-fit connection that resists undesirable rotational movement with the lipstick compartment.

11. Figures of the Cosmetic Container described herein above are annexed hereto as **Exhibit 1**.

12. On or about the same time, Bengis decided to retain counsel for the purpose of conducting a patent search, determining the patentability of the cosmetic container, receiving an opinion regarding such patentability, and if warranted, filing an application with the PTO seeking a patent covering the Cosmetic Container.

13. To this end therefore, on or about 2000-2001, Bengis retained Richard Moss, Esq. and his firm Kramer Levin Naftalis and Frankel, LLP.

14. Upon information and belief, Mr. Moss either did not conduct a patent search or if he did conduct a patent search, it was not in accordance with normal patent search procedures or in accordance with the care normally taken during the conducting of patent searches.

15. As a result, when Mr. Moss provided a patentability opinion for the Cosmetic Container, *i.e.* that it was novel and unobvious, he did not consider all of the prior art available to Mr. Moss at the time of the rendering of his opinion.

16. Bengis relied on Mr. Moss' representations that the invention was novel, unobvious and patentable, and based on such reliance Bengis authorized Mr. Moss to file an application with the USPTO seeking a patent covering the Cosmetic Container.

17. Thus, on July 31, 2000, Mr. Moss filed an application for the Cosmetic Container.

18. Numerous times during the patenting process for the Cosmetic Container, following the July 31, 2000 filing, Mr. Moss assured Bengis that his invention was patentable.

19. Bengis continued to rely on Mr. Moss' assurances that he would receive a patent for his cosmetic container. As a result, not only did he incur the costs of filing for a patent both domestically and abroad, but he proceeded to gear up for the manufacturing, marketing, offering to sell and selling the Cosmetic Container.

20. Had Mr. Moss not made such assurances Bengis would have never incurred either the patenting costs or the manufacturing, marketing and selling costs.

21. On September 17, 2002, the USPTO issued U.S. Patent No. 6,450,179 covering the Cosmetic container (the '179 patent). A copy of the '179 patent is annexed hereto as **Exhibit 2**.

22. On or about the beginning of 2003, Bengis engaged in licensing agreement discussions with a cosmetic packaging manufacturer World Wide Packaging, Inc., organized and existing under the laws of the State of New Jersey and having a principal place of business at 7 Columbia Turnpike, Florsham Park, New Jersey, 07932.

23. During such licensing discussions, Bengis was interested granting the right to World Wide Packaging Inc. and World Wide Packaging Inc. was interested in securing the right from Bengis, to make, use or sell the invention embodied in the '179 patent.

24. On or about April 3, 2003, World Wide Packaging Inc. declared that it was not longer interested in entering into an agreement with Bengis and that it was terminating all discussions regarding a possible licensing agreement in connection with the '179 patent.

25. Shortly thereafter, World Wide Packaging began marketing a cosmetic device that was virtually identical to the Cosmetic Container embodied in the '179 patent, thus infringing the '179 patent.

26. On November 29, 2004, Bengis filed infringement claims against World Wide Packaging, Inc. in the United States District Court for the Eastern District of New York, Civil Action No. 04-5354 (hereinafter the "World Wide Litigation").

27. On or about 2007, during the World Wide Litigation, it was shown for the very first time that the '179 patent was invalid and unenforceable on the basis of two newly discover patents, i.e. Swiss Letters Patent No. 623,467 and U.S. Letters Patent No. 2,724,849 (hereinafter collectively referred to as "the Patents"), that had issued more than one year prior to the filing date of the '179 patent, i.e., July

31, 2000. The patents were discovered by World Wide Packaging, Inc.

28. The patents' issue date preceded the filing date of the '179 patent of by a significant number of years.

29. Mr. Moss's patent search never revealed the Patents. Thus, Mr. Moss never brought these patents to the attention of either the USPTO or Bengis for consideration.

30. Nor, were the patents ever been considered by the USPTO, at any time during the prosecution of the application for the '179 patent.

31. Upon information and belief, the discovery of these patents during a normal, routine patent search would have immediately revealed such patents prior to the filing of the '179 patent. Had Defendants conducted a proper and thorough patent search, they would have discovered such patents.

### First Cause of Action
### (Negligence/Legal Malpractice)

32. Plaintiff incorporates by reference all of its responses and allegations contained in Paragraphs 1-34 of the Complaint, as though more fully set forth herein.

33. At all relevant times, an attorney client relationship existed between Bengis and each of the Defendants with respect to the performance of a proper patent search, determination of the patentability of the Cosmetic Container on the basis of a proper patent search, issuance of an opinion regarding the patentability of the Cosmetic Container, and the proper prosecution of the '179 Patent application with the USPTO.

34. In so representing Bengis, Richard Moss, Esq. was at all relevant times acting within the course and scope of his employment at Kramer, Levin, Naftalis & Frankel, LLP.

35. Pursuant to the attorney-client relationship, Defendants owed Bengis a duty to exercise the reasonable skill and common knowledge expected for the legal profession, including but not limited to, a duty to perform a proper patent search and based thereon to properly prosecute the '179 Patent application with the USPTO.

36. In breach of their duties to Bengis, Defendants failed to exercise the reasonable skill and common knowledge expected of the legal profession. Specifically, upon information and belief, Defendants failed to conduct a thorough and proper patent search, failed to discover Swiss Letters Patent No. 623, 467 and U.S. Letters Patent No. 2,724,849, that had issued more than one year prior to the filing date of the '179 patent, *i.e.*, July 31, 2000, and thus failed to disclose it either to Bengis or to the U.S.P.T.O. during the prosecution of the '179 patent application.

37. Upon information and belief, Defendants' breaches of the duties owed to Bengis caused Bengis to suffer serious economic damages in excess of $500,000 that continue through the present, including but not limited wasted attorneys' fees and expenses incurred in pursuit of the World Wide Litigation; loss of royalties Bengis could have earned from licensing the '179 patent; and additional attorneys' fees and expenses incurred to remedy Defendants' malpractice and negligence.

38. Upon information and belief, but for Defendants' negligence and malpractice, Bengis would never have incurred the costs associated with World Wide Litigation, and would never have gone ahead with the prosecution and securing of the '179 patent.

39. By reason of the foregoing, Defendants are liable to Plaintiff.

## Second Claim for Relief
## Negligent Misrepresentation

40. Plaintiff incorporates by reference all of its allegations contained in Paragraphs 1-43 of the present Complaint, as though more fully set forth herein.

41. At all relevant times, an attorney client relationship existed between Bengis and each of the Defendants with respect to the performance of a proper patent search, determination of the patentability of the Cosmetic Container on the basis of a proper patent search, issuance of an opinion regarding the patentability of the Cosmetic Container, and the proper prosecution of the '179 Patent application with the USPTO.

42. In so representing Bengis, Richard Moss, Esq. was at all relevant times acting within the course and scope of his employment at Kramer, Levin, Naftalis & Frankel, LLP.

43. As part of that attorney-client relationship, Defendants negligently misrepresented to Bengis that they could and would perform a proper patent search and based thereon properly prosecute the '179 Patent application with the USPTO. Further, as part of the attorney-client relationship between Defendants and Bengis, Defendants represented that they were highly competent in conducting patent searches and in practicing before the PTO, and that they were well versed in PTO regulations and procedures.

44. Defendants intended that Bengis rely, or should have reasonable foreseen that Bengis would so rely, on the above referenced negligent misrepresentations. Nevertheless, upon information and belief, Defendants did not conduct a thorough and complete patent search to ensure that any patentability opinion in connection with the Cosmetic Container would be based on the evaluation of **all** of the prior

art available prior to the filing of the '179 patent application.

45. Bengis reasonable and foreseeably relied on Defendants' negligent misrepresentations. Had Bengis known that Defendants had not considered all of the prior art, i.e. all of the prior patents available at the time of the filing of the '179 patent application, Bengis would not have authorized Defendants to file the '179 patent applications, both domestically and internationally, nor would Bengis have incurred the costs of gearing up for the manufacturing, marketing, using, and offering to sell the Cosmetic Container.

46. Upon information and belief, as a proximate result of Bengis reliance on Defendants' negligent misrepresentations, Bengis suffered serious economic damages in excess of $500,000 that continue through the present, including but not limited: a) wasted attorneys' fees and expenses incurred in pursuit of the World Wide Litigation; b) loss of royalties Bengis could have earned from licensing the '179 patent; and c) additional attorneys' fees and expenses incurred to remedy Defendants' malpractice and negligence. All conditions precedent to Plaintiff's recovery on this cause of action have occurred or have been satisfied.

47. But for Defendants' negligent misrepresentations, Bengis would never have incurred the costs associated with World Wide Litigation, and would never have gone ahead with the prosecution and securing of the '179 patent.

48. By reason of the foregoing, Defendants are liable to Plaintiff.

### Third Claim for Relief
### Breach of Contract

49. Plaintiff incorporates by reference all of his allegations contained in Paragraphs 1-47 of the present Complaint, as though more fully set forth herein.

50. Defendants' conduct, as described herein, constitutes a breach of contract.

51. By reason of the foregoing, Plaintiff has been injured in an amount of $500,000.

### Fourth Claim for Relief
### Breach of Representations and Warranties

52. Plaintiff incorporates by reference all of his allegations contained in Paragraphs 1-47 of the present Complaint, as though more fully set forth herein.

53. Defendants' conduct, as described herein, constitutes a breach of Representations and Warranties.

54. By reason of the foregoing, Plaintiff has been injured in an amount of at least $500,000.

### JURY DEMAND

Pursuant to Rule 38(d) of the Federal Rules of Civil Procedure, Plaintiff Fido's Fences demands a trial by jury on all issues so triable by right.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff John Joseph Bengis, requests that this Court grant him judgement against Defendants and award him:

a. Actual, consequential, statutory, and exemplary damages and attorneys' fees, as permitted by law, with interest thereon; and

b. Such other and further relief to which Plaintiff is entitled.

Respectfully Submitted,

INTELLECTULAW
THE LAW OFFICES OF P.B. TUFARIELLO, P.C.

Dated: 04/05/08

Panagiota Betty Tufariello (PBT 3429)
25 Little Harbor Road
Mount Sinai, NY 11766
631-476-8734
631-476-8737(FAX)
24yellow@optonline.net
info@intellectulaw.com
betty@intellectulaw.com

Attorneys for Plaintiff
JOHN JOSEPH BENGIS