UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN JOSEPH BENGIS, an individual,<br><br>   Plaintiff,<br><br>v.<br><br>RICHARD MOSS, ESQ., an individual, and KRAMER LEVIN NAFTALIS & FRANKEL LLP a Limited Liability Partnership<br><br>   Defendants | Case No. 08-CV-04237 (JSR)<br><br>PLAINTIFF JOHN JOSEPH BENGIS' AFFIDAVIT IN SUPPORT OF PLAINTIFF JOHN JOSEPH BENGIS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS |

John Joseph Bengis, being duly sworn, deposes, states and declares as follows:

1.    My name is John Joseph Bengis. I am over 18 years of age. I resided at 33 Barker Avenue, No. 2A, White Plains, New York 10601.

2.    I am fully competent to make this affidavit.

3.    I am the plaintiff in this matter and as such I have personal knowledge of all of the facts stated in this affidavit. To my knowledge all of the facts stated in this affidavit are true and correct.

4.    Late in the summer of 1999, I developed a device known as a cosmetic container with interchangeable attachments (hereinafter "the Cosmetic Container"). It includes a lipstick compartment having a base that is adapted to removably engage one of a set of interchangeable attachments. Such attachments can be a receptacle for a second cosmetic container provided with an applicator, as for example a lip gloss container; a cosmetic pencil sharpener; or a receptacle for holding an aqueous bubble forming solution provided with an appropriate bubble blowing device.

5.    Specifically, the base of the lipstick compartment is provided with a an attachment mechanism, i.e. a partial bore, which is adapted to  removably engage any one of the interchangeable attachments.  The interchangeable attachments in turn are provided with  an outer surface having splines or the like, for grippingly engaging the inner surface of the partial bore at the  base of the lipstick compartment, to achieve a friction-fit connection that resists undesirable rotational movement with the lipstick compartment.

6.    Figures of the Cosmetic Container described herein above are annexed to the Complaint initiating the present lawsuit as **Exhibit 1**.

7.    On or about the same time, I decided to retain counsel for the purpose of conducting a patent search, determining the patentability of the cosmetic container, receiving an opinion regarding such patentability,  and if warranted, filing an application with the United States Patent and Trademark Office (hereinafter "USPTO") seeking a patent covering the Cosmetic Container.

8.    To this end therefore, on or about the year 2000, I retained Richard Moss, Esq. and his firm Kramer Levin Naftalis and Frankel, LLP.

9.    Upon information and belief, Mr. Moss either did not  conduct a patent search or if he did conduct a patent search , it was not in accordance with normal patent search procedures or in accordance with the care normally taken during the conducting of patent searches.

10.    As a result, when  Mr. Moss provided a patentability opinion for the Cosmetic Container, *i.e.* that it was novel and unobvious, he did not consider all of the prior art available to Mr. Moss at the time of the rendering of his opinion.

11.    I relied on Mr. Moss' representations that the invention was novel, unobvious and patentable, and based on such reliance I authorized Mr. Moss to file an application with the USPTO seeking a patent covering the Cosmetic Container.

12.    Thus, on July 31, 2000, Mr. Moss filed an application for the Cosmetic Container.

13.    Numerous times during the patenting process for the Cosmetic Container, following the July 31, 2000 filing, Mr. Moss assured me that my invention was patentable.

14.    I continued to rely on Mr. Moss' assurances that I would receive a patent for my cosmetic container. As a result, not only did I incur the costs of filing for a patent both domestically and abroad, but I proceeded to gear up for the manufacturing, marketing, offering to sell and selling the Cosmetic Container.

15.    Had Mr. Moss not made such assurances, I would have never incurred either the patenting costs or the manufacturing, marketing and selling costs.

16.    On September 17, 2002, the USPTO issued U.S. Patent No. 6,450,179 covering the Cosmetic container (the '179 patent). A copy of the '179 patent is annexed to my Complaint initiating the present lawsuit as **Exhibit 2**.

17.    On or about 2002 I terminated my relationship with the Defendants.

18.    On November 29, 2004, I filed infringement claims against a New Jersey corporation, World Wide Packaging, Inc. in the United States District Court for the Eastern District of New York, Civil Action No. 04-5354 (hereinafter the "World Wide Litigation").

19.    On or about 2007, during the World Wide Litigation, it was shown for the very first time that the '179 patent was invalid and unenforceable on the basis of two newly discover patents, i.e. Swiss Letters Patent No. 623,467 and U.S. Letters Patent No. 2,724,849 (hereinafter collectively referred to as "the Patents"), that had issued more than one year prior to the filing date of the '179 patent, *i.e.*, July 31, 2000. The patents were discovered by World Wide Packaging, Inc A copy of World Wide Packaging, Inc.'s EXPERT REPORT OF JOHN G. KAWAND showing the invalidity of the '179 patent because Defendants failed to do a proper

search is annexed hereto as **Exhibit 3**.

20. The Patents' issue date preceded the filing date of the '179 patent of by a significant number of years.

21. Defendants' patent search never revealed the Patents. Thus, Defendants never brought these patents to the attention of either the USPTO or to me for consideration.

22. Nor, were the Patents ever considered by the USPTO, at any time during the prosecution of the application for the '179 patent.

23. Upon information and belief, the discovery of these patents during a normal, routine patent search would have immediately revealed such patents prior to the filing of the '179 patent.

24. Had Defendants conducted a proper and thorough patent search, they would have discovered such patents.

25. As a result of World Wide Packaging's December 17, 2007, attack on my '179 patent on the basis of two patents that Defendants failed to find during their patent search, I have been deprived of my right to enforce my patent, i.e. to prevent others from making, selling or using my invention as embodied in the '179 patent.

26. It was not until December 2007, when my patent was shown that more likely than not it was invalid and unenforceable, that I could reasonably calculate my damages.


**WHEREFORE,** I respectfully pray for the denial of Defendants' Motion to Dismiss my Complaint and for any other relief the Court deems just and proper.

Date: _7/10/08_

_John Joseph Bengis_

JOHN JOSEPH BENGIS

SUBSCRIBED and SWORN to before me this

_10th_ day of _July_ , 2008.

_Debbie R. Blangiardo_

Notary Public

DEBBIE R. BLANGIARDO
Notary Public, State of New York
No. 01BL6154963
Qualified in Suffolk County
Commission Expires October 23, 20_10_

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN JOSEPH BENGIS, an individual, | : | |
| | : | Civil Action No. CV-04-5354 |
| Plaintiff/Counterclaim Defendant, | : | (SJF)(WDW) |
| | : | |
| v. | : | |
| | : | |
| WORLD WIDE PACKAGING, INC., | : | Expert Report of John G. Kawand |
| a corporation, QVC, INC., a | : | |
| corporation, and JOHNSON MARKETING | : | |
| GROUP, INC., a corporation, | : | |
| | : | |
| Defendants/Counter-claimants. | : | |
| | : | |

## I.    INTRODUCTION

I have been retained as an expert by World Wide Packaging, Inc., ("WWP") to provide opinions in the above-referenced matter. This report details my opinions as to why claims 1-10 and 19-28 of United States Patent No. 6,450,179 ("the '179 Patent") are invalid pursuant to 35 U.S.C. § 103. This report also contains my opinions why defendants' (hereinafter collectively "WWP") products alleged to infringe by the plaintiff John Joseph Bengis ("Bengis") do not fall within the scope of claims 1-10 and 19-28 and therefore, do not infringe the '179 Patent.

## II.    EDUCATION AND PROFESSIONAL QUALIFICATIONS

My qualifications are set forth in my curriculum vitae, a copy of which is attached hereto as Exhibit A and incorporated by reference.

## III.    COMPENSATION

I am being compensated at a rate of $150.00/hour for the time spent on preparing this expert report, for the time necessary to prepare for deposition testimony and trial testimony, if necessary, and for providing deposition and trial testimony and testimony in this matter, if

Expert Report (John Kawand) (2)

necessary. I have no financial interest in the outcome of this litigation nor is my compensation dependent on the outcome of this matter.

## IV.    OTHER CASES IN WHICH I HAVE BEEN RETAINED AS AN EXPERT

I have not been retained as an expert before in any litigation.

## V.    DATA OR OTHER INFORMATION
## CONSIDERED IN FORMULATING OPINIONS

I have relied on the following materials in forming the opinions expressed in this report:

1.    U.S. Patent No. 6,450,179;

2.    The '179 Patent prosecution history including the references cited therein;

3.    The Court's Opinion and Order dated June 22, 2006;

4.    Physical examples of the product offered by WWP alleged to infringe the '179 Patent;

5.    Knight's American Mechanical Dictionary, V. III, p. 2281 (1876);

6.    Swiss Patent No. 623,467 ("Swiss" '467 Patent and English translation);

7.    U.S. Patent No. 2,724,849 ("Schultz" '849 Patent);

8.    U.S. Patent No. 1,534,827 ("Aste");

9.    U.S. Patent No. 2,590,329 ("Kromray");

10.    U.S. Patent No. 2,665,696 (Weis);

11.    U.S. Patent No. 2,964,045 (Otto *et al.*);

12.    U.S. Patent No. 3,171,416 (Pimentel);

13.    U.S. Patent No. 5,655,554 (Goldberg);

14.    U.S. Patent No. 5,897,262 (Bratby-Carey);

15.    U.S. Patent No. 5,941,254 (Heler);

16.    U.S. Patent No. 6,241,408 (Lang);

17.    U.S. Patent No. 6,276,853 (Breidenbach *et al.*);

18.  U.S. Patent No. 6,464,418 (Visser *et al.*);

19.  U.S. Patent No. 6,010,265 (Bouix);

20.  Schematic of claim dependency; and

21.  Physical inspection of products manufactured and/or sold by WWP.

## VI.  SUMMARY OF OPINIONS

Based on my knowledge and review of the above-listed information and my general experience in the field, it is my opinion that independent claims 1, 19 and 21 are invalid pursuant to 35 U.S.C. § 103, based upon the following references: the Swiss '467 Patent in view of the Schultz '849 Patent in combination with the knowledge of one of ordinary skill in the art to which the invention pertains. Finally, with respect to each of the limitations in the dependent claims 2-10, 20 and 22-28, it is my opinion that the addition of such features would be obvious to one of ordinary skill in the art and such additions do not render the dependent claims patentable.

It is also my opinion, based upon my review of the '179 Patent and in light of the Court's Opinion and Order of June 22, 2006, interpreting certain phrases contained in independent claims 1, 19 and 21 of the '179 Patent, and granting summary judgment that glued two component cosmetic containers alleged to infringe by Bengis were held to not infringe the '179 Patent and my inspection of the product in question, that WWP's unglued two compartment containers do not infringe any of claims 1-10 or 19-28 of the '179 Patent.

Specifically, with respect to claim 1 and the claims dependent thereon, the two components of WWP's product are not releasably coupled such that as the Court has stated "to fasten the open base and cap in a manner that permits easy and consistent removal and replacement of receptacle when desired." (Opinion of June 22, 2006, p. 10.) Likewise, with respect to claim 19 and the claim dependent thereon, it is my opinion, that WWP's product does

not allow for "removable coupling" between the two components as interpreted by the Court in that there is no "fastening between the open base and cap that allows easy and consistent removal and replacement of the cap when desired." (Opinion of June 22, 2006, p. 12.) It is also my opinion that WWP's allegedly infringing product does not infringe claim 21 or any claims dependent thereon for a "multi-purpose container" having the "releasably coupling" feature that allows for "fastening the open base and cap in a manner that allows for the easy and consistent removal and replacement of the cap when desired." (Opinion of June 22, 2006, p. 12-13.)

## VII.    OPINIONS EXPRESSED AND REASONS THEREFORE

### A.    LEGAL BACKGROUND

I have been asked by counsel for WWP to render an opinion as to whether certain of the claims of the '179 Patent issued in the name of John Joseph Bengis can be found in the prior art. I have been advised that a patent claim is invalid for anticipation if any one prior art reference discloses all the features of the claimed invention. I have also been advised that a patent claim is invalid for obviousness if the differences between the collective teachings of the prior art and the claimed invention would have been obvious to a person of ordinary skill in the art at the time the invention was made. In this case, I have been advised that the earliest possible effective date of any of the claims of the '179 Patent is July 31, 2000, the filing date of the provisional application to which the '179 Patent claims priority. Therefore, I have been advised that the prior art I rely upon for my opinion must have an effective date earlier than July 31, 1999. In reviewing the references that I rely upon for my opinion, I do notice that each of the references relied upon each have an effective date prior to July 31, 1999.

I further understand that obviousness can be rebutted by evidence called secondary considerations of nonobviousness. I am advised that such secondary considerations include long-felt need for the invention, failure of others in coming up with the solution that the

invention claims to solve, commercial success of the invention and copying of the invention by others. I am not aware of any long-felt need or failure of others which preceded Mr. Bengis' claimed invention and I do not believe such existed. I also have no information as to whether Mr. Bengis' invention enjoyed commercial success or was copied by others.

With respect to the first inquiry in a determination of obviousness, scope and content of the prior art, clearly, the prior art for the '179 Patent deals with multipurpose containers in the nature of two part containers where at least one part of the container will include a first product.

As to the level of ordinary skill in the art, I understand that the level of ordinary skill must be assessed as of the date of the invention of the '179 Patent. In this case, I have been advised that the date of invention is some time prior to the date of filing the provisional application of July 31, 2000. Therefore, the appropriate time for assessing the level of ordinary skill in the art for the Bengis invention is July, 2000.

Finally, with respect to the issue of who is one of ordinary skill in the art, it is my opinion that the '179 Patent is directed to persons working in the area of design and/or manufacture of containers including glass and plastic containers. Thus, it is my opinion a person of ordinary skill in the art in July, 2000, would have been an individual having a B.S. Degree in mechanical engineering and knowledge regarding the design and manufacturing of packaging products made of glass and plastic. This knowledge would include familiarity with molding techniques for manufacturing plastic components to be used to manufacture plastic packaging in the nature of bottles, connections, caps and forms of closures for such bottles. A person of ordinary skill in the art can also be an individual who does not have a college degree in engineering but has actual experience with the design and manufacture (including molding) of glass and plastic packaging.

Based upon this definition of a person of ordinary skill in the art, I was a person of at least ordinary skill in the art in 2000 and I continue to exercise at least that level of skill today.

## B.    VALIDITY ANALYSIS

General multi-purpose or two part containers have been known since at least the early 1920's as evidenced by U.S. Pat. No. 1,534,827 to inventor A.L. Aste, for example, directed to a multi-purpose container which included a shoe cleaning stick or polish within a container, an applicator, and a distributor. Multi-purpose or two part containers have also been known in the cosmetic art since at least the early 1950's as evidenced by U.S. Pat. No. 2,590,329 to V. Kromray, which discloses a two part container for lipstick in one part and a brush compact in the second part. This is in fact admitted by Mr. Bengis in his patent where he states:  "it is generally known to provide a lipstick dispenser in combination with a container or dispenser of another product." (the '179 Patent, col. 1, ll. 22-24.)  Further examples of multi-purpose or two part cosmetic containers are shown in the chart below.

| U.S. PATENT NUMBER | INVENTOR | DATE OF PATENT |
|---|---|---|
| 2,590,329 | Kromray | March 25, 1952 |
| 2,665,696 | Weis | January 12, 1954 |
| 2,724,849 | Schultz | November 29, 1955 |
| 2,964,045 | Otto et al. | December 13, 1960 |
| 3,171,416 | Pimentel | March 2, 1965 |
| 5,509,742 | Balzarini | April 23, 1996 |
| 5,655,554 | Goldberg | August 12, 1997 |
| 5,897,262 | Bratby-Carey | April 27, 1999 |
| 5,941,254 | Heler | August 24, 1999 |
| 6,241,408 | Lang | June 5, 2001 |
| 6,276,853 | Breidenbach et al. | August 21, 2001 |
| 6,464,418 | Visser et al. | October 15, 2002 |
| Swiss Patent No. 623,467 | Trabattoni | July 15, 1981 |

In reviewing these references, it is my opinion that the Schultz '849 Patent and the Swiss '467 Patent are the most pertinent references with respect to the validity of claims 1-10 and 19-28 of the '179 Patent.  Indeed, the Swiss '467 Patent practically anticipates the Bengis

invention set forth in the independent claims. At the very least, these references in combination with the knowledge of one of ordinary skill in the art at the time of the Bengis invention, render claims 1-10 and 19-28, obvious pursuant to 35 U.S.C. § 103.

More particularly, Swiss '467 Patent is directed to a multi-purpose container having two compartments for cosmetic products. As disclosed in the Swiss '467 Patent, the purpose of this invention is to provide a container for cosmetic products which has the advantage of containing a first cosmetic product, such as a lipstick, and a second cosmetic product, such as a nail polish as part of the same container. The figure reproduced below is a figure contained in the Swiss 467 Patent.



**'467 reference Fig. 2**

Referring to the above figure, in my opinion, the Swiss '467 Patent reference discloses almost every element of the multi-purpose container claimed in claims 1, 19 and 20 of the '179 Patent. Specifically, the Swiss '467 Patent discloses a multi-purpose container for cosmetic products, comprising a compartment or case 13 for housing a first product R, wherein the compartment includes a dispenser 16 for dispensing said first product (lipstick R). The patent

also discloses that the compartment or case 13 includes an open base in casing 14. There is also shown in the Swiss '467 Patent a cap 11 placed within the open base formed in case 14 having a receptacle or bottle 10 attached thereto to hold a second product (nail polish V). The receptacle or bottle 10 has an open neck adapted to releasably engage the cap 11.

The only thing not shown in the Swiss '467 Patent, which is claimed in claim 1 of the '179 Patent is the open base including an interior surface having a plurality of ribs projecting therefrom and a cap having an outer surface which includes a plurality of corresponding splines for engaging the ribs in the open base to releasably couple the cap to the open base which is part of the first compartment or case 14 such that the cap will resist rotational movement within the base. With respect to claim 19, the Swiss '467 Patent, again, shows each of the elements of the claim, except for the interior surface of the open base and the outer surface of the cap being shaped to permit removable coupling of the cap. Finally, with respect to claim 21, again, the Swiss '467 Patent discloses each and every element of this claim except for the interior surface of the open base having a preselected shape and a cap having an outer surface which corresponds with the preselected shape of the interior surface of the open base for releasably coupling the two components. Notwithstanding these omissions, it is my opinion, based upon the knowledge of one of ordinary skill in the art, at the time of the invention, that it would have been obvious to construct a two part container where the interior surface of one part of the container and the exterior surface of the second part of the container would be complementary surfaces that would allow the two parts to be releasably or removably coupled but yet, allow for rotational resistance. For example, it was well known to include ribs within an open base and splines in the cap in a manner such that the ribs and splines would be engaged to releasably couple the cap to the open base but resist rotational movement of the cap within the base. The basis for my opinion is that

the concept of ribs and corresponding splines was well known at the time of the invention. Clearly, the use of ribs and splines has been known since the turn of the century, that is the 19th century to the 20th century.  *See* Knight's American Mechanical Dictionary, V. III, p. 2281 (1876).

Even more importantly, the use of mating surfaces such as ribs and splines is shown in the prior art to provide releasable engagement but still provide rotational resistance in multi-purpose containers. This is best evidenced when one looks at the multi-purpose container disclosed in the Schultz '849 Patent and shown below.



**'849 Patent Fig. 1, 2, 3**

The Schultz '849 Patent discloses a multi-purpose container wherein, there is disclosed a two part container including a bottle 23 and a brush element 9' attached utilizing an open base and cap arrangement, closure element 20, to provide the connection between the two components. The multi-purpose container has a compartment or cylindrical body 3 for holding a first product which as shown in the figure above is a brush element formed by bristles (9'). The compartment or closure element 20, includes an open base in cylindrical body 3. The open base includes an interior surface having a plurality of ribs and recesses 26. There is also disclosed a cap on the second component having an outer surface which includes a plurality of corresponding splines or axially extending ridges 25 which are accepted by the complementary shaped recesses 26 in the open base in cylindrical body 3. As stated in the Schultz '849 Patent, "[t]he screw cap 21 is provided upwardly of its threaded portion with a top-section 24 having a peripheral series of axially extending ridges 25 for snug-fitting retentive engagement in a complimentary shaped recess 26 formed in the lower end of a cyndrical body 3'." (Schultz '849 Patent, col. 1, l. 71-col. 2, l. 4.) Moreover, the Schultz '849 Patent discloses that the recesses are "sized for snug-fitting axially slidable engagement upon the external peripheral face of the cap and extending axially upwardly therefrom, said engagement being between the cap and the body-member being sufficiently tight to permit the cap to be rotated into an out of closure-forming engagement with the container by means of the body-member, but nevertheless being sufficiently free to permit the body-number to be pulled axially with respect to the cap and thus removed therefrom." (*Id.* at col. 2, ll. 33-42.) Clearly, in my opinion this patent discloses that the bottle 23 having the screw cap 21 with the complementary splines, is releasably coupled in that there is easy and consistent removal of cap 21 from cylindrical body 3 but yet rotational resistance is provided so that the bottle can be unscrewed from the cap without the cap having to

be removed from the cylindrical body 3. There is also disclosed in this patent a receptacle or bottle 23 for holding a product which has an open neck 22 adapted to engage the cap 21.

Based on the foregoing, in view of the Swiss '467 Patent and the Schultz '849 Patent it is my opinion, it would have been obvious to one of ordinary skill in the art at the time the invention was made to incorporate the connection between the cylindrical body 3 and the screw cap 21 of the multi-purpose two part container shown in the Schultz '849 Patent which includes ribs and the splines discussed above to the multi-purpose two part container shown in the Swiss '467 Patent which includes a compartment or first part in the nature of tube 14 having an open base and a second part which includes cap 11 on the cosmetic bottle shown in the Swiss '467 Patent such that the cap 11 would be releasably coupled to the container 14 but yet resist rotational movement of the cap 11 within the tube 14. Accordingly, it is my opinion that claim 1 is invalid as being obvious.

I have been advised that when analyzing dependent claims, each of the elements found in the independent claim(s) are included in the dependent claim. This being the case, it is my opinion that each of the dependent claims, except for claim 7, would be obvious in view of the Swiss '467 Patent and the Schultz '849 Patent based upon the analysis set forth above together with the fact that the Swiss '467 Patent, discloses the additional limitation recited in the dependent claim.

Specifically, with respect to claim 2 of the '179 Patent which is dependent on claim 1, this claim includes the limitation "wherein said cap supports an applicator for removable insertion in said receptacle." The Swiss '467 Patent discloses that very configuration wherein an applicator 12 for nail polish is supported by cap 11 for removable insertion in receptacle or bottle

10. Therefore, it is my opinion that this feature is shown in the art and does not render this claim patentable. Rather this claim is also rendered obvious under 35 U.S.C. § 103.

With respect to claim 3 which is dependent upon claim 1 which claims a "first product in said compartment." The Swiss '467 Patent discloses a first product R in the compartment 14 Accordingly, this feature is shown in the prior art and does not render Claim 3 independently patentable but rather this claim is also obvious in view of the above-discussed combination of references.

With respect to claim 4, which is dependent upon claim 3 which in turn is dependent on claim 1, this claim recites that the first product is a cosmetic. In that regard, the Swiss '467 Patent identifies the first product R as being lipstick which is a cosmetic. Again, this adds nothing to the patentability of claim 4 of the '179 Patent, and thus it is my opinion that this claim is rendered obvious by the Swiss '467 Patent in view of the Schultz reference.

With respect to claim 5, which is dependent upon claim 4 which is dependent on claim 3 which is dependent on claim 4, this claim recites that the cosmetic is lipstick. Again, this is disclosed in Swiss '467 Patent which discloses lipstick as the cosmetic in the first compartment. This claim would be obvious in my opinion in view of the above-discussed references.

Now referring to claim 6, which is dependent upon claim 1, this claim adds the limitation that there is a cover for the first compartment. This limitation is shown in the Swiss '467 Patent since the Swiss '467 Patent specifically discloses cover 17 placed over the lipstick R within tube 14. This limitation does not make claim 6 patentable in view of the above references.

With respect to claim 7, which is also dependent upon claim 1, the limitation of a wiper gasket adapted for insertion in the open neck of the receptacle or bottle is claimed. Although not disclosed in the Swiss '467 Patent and the Schultz '849 Patent, the use of a wiper gasket was well

known in the cosmetic art with respect to bottles or receptacles holding cosmetic products at the time of the invention and therefore, this does not add patentability to the claim. In particular, this element is disclosed in U.S. Patent No. 6,010,265 ("the Bouix Patent"), where wiper 10 is placed into the neck 5 of container 1. Therefore, it is my opinion that claim 7 is unpatentable since it would be obvious to add a wiper gasket as disclosed in Bouix to receptacle or bottle 10 of the Swiss '467 Patent based on the combination of the Swiss '467 Patent in view of the Schultz '849 Patent and further, in view of the Bouix Patent.

With respect to claim 8, also dependent upon claim 1, this claim adds the limitation of a "second product in said receptacle." Again, the Swiss '467 Patent discloses a first compartment which contains lipstick R and a second receptacle or bottle which contains a second product, nail polish V. Clearly, the Swiss '467 Patent illustrates the limitation set forth in the claim and does not add to the patentability of the claim in view of the combination of references previously discussed.

With respect to claim 9, this claim is dependent upon claim 8 which is dependent on claim 1, and claims that the second product is nail polish. Again, this claim is rendered obvious in view of the Swiss '467 Patent in combination with the Schultz '849 Patent, since the Swiss '467 Patent specifically discloses nail polish as a second product in a multi-purpose container.

Finally, with respect to claim 10 which is dependent upon claim 9 which is dependent on claim 8 which is dependent on claim 1, this claim is much like claim 2 wherein it requires the cap to support a brush for removable insertion in said receptacle. This again is clearly disclosed in the Swiss '467 Patent and thus, renders this claim obvious in view of the previously discussed references.

Moving on to independent claim 19, again, it is my opinion that claim 19 is rendered obvious for the same reasons that claim 1 is rendered obvious in light of the combination of the Swiss '467 Patent and the Schultz '849 Patent. The only difference between claim 19 and claim 1 is that claim 19 does not specifically recite the ribs and splines. Claim 19 is broader and recites a compartment for housing a first cosmetic product having an open base having an interior surface, and a cap having an outer surface, wherein the interior surface of the open base and the outer surface of the cap are shaped to permit removable coupling of said cap with said compartment while resisting rotational movement of the cap within the open base. In my opinion, this is a more general description of what is claimed in claim 1.

Such a connection between component parts in a cosmetic container is clearly disclosed and taught in the Schultz '849 Patent, as described above. It would have been obvious to one of ordinary skill in the art at the time the invention was made to incorporate the connection between the cylindrical body 3 and the screw cap 21 of the multi-purpose two part container shown in the Schultz '849 Patent to the multi-purpose two part container shown in the Swiss '467 Patent which includes a compartment or first part in the nature of tube 14 having an open base and the second part which includes cap 11 on the cosmetic bottle of the Swiss '467 Patent such that the cap 11 would be a removably coupled to tube 14 but yet resist rotational movement of the cap 11 within the tube 14 as shown in the Swiss '467 Patent.

Claim 19 also includes one additional limitation that is not found in claim 1 of the Bengis Patent and that is that the receptacle or bottle has an open neck adapted to be releasably engagable with the cap, and a second product applicator supported on at least one of said cap and said open neck. This limitation is clearly found in the Swiss '467 Patent as shown in FIG. 1 where there is receptacle 10 which is the bottle which is releasably engageable from the cap 11

the bottle having a second product which is nail polish having an applicator 12 which applicator is supported on cap 11. Notwithstanding this additional limitation, the claim is rendered obvious based upon the combination of the Swiss '467 Patent in view of the Schultz '849 Patent pursuant to 35 U.S.C. § 103.

With respect to claim 20, which is dependent upon claim 19, this claim adds the limitation that the first cosmetic product is lipstick. As set forth above with respect to the claims that were dependent upon claim 1, the Swiss '467 Patent clearly discloses that the first cosmetic product in the compartment of the multi-purpose container is lipstick R. Accordingly, this element does not result in claim 20 being patentable and in my opinion this claim is rendered obvious in view of the previously discussed combination of the Swiss and Schultz references.

Now referring to claim 21, claim 21 includes all the limitations contained in claims 1 and 19 as discussed above, but again, generally describes the cooperativeness between the open base and cap as follows: "said open base including an interior surface having a pre-selected shape, a cap having an outer surface having a shape corresponding to said preselected shape of said interior surface of said open base for releasably coupling said cap to said compartment while resisting rotational movement of said cap within said base." (the '179 Patent, col. 8, ll. 13-19.) This again, is a more general description of the ribs and splines claimed in claim 1 and the interior shaped surface of the open base and exterior surface of the cap claimed in claim 19. Again, as with each of the previously discussed claims, the purpose of having ribs and splines, complementary shaped interior and outer surfaces or corresponding pre-selected shapes on two components that are to mate is to provide a means to resist rotational movement of the cap within the base to allow for the opening of the receptacle or bottle and also to "releasably couple", provide a "removable coupling," and allow "releasably coupling" between the open base and cap.

It is my opinion, it would have been obvious to one of ordinary skill in the art at the time the invention was made to incorporate the connection between the cylindrical body 3 and the screw cap 21 of the multi-purpose two part tube shown in the Schultz '849 Patent to the multi-purpose two part container shown in the Swiss '467 Patent which includes a compartment or first part in the nature of tube 14 having an open base and a second part which includes cap 11 on the cosmetic bottle shown in the Swiss '467 Patent to allow releasably coupling of the cap 11 to the tube 14 but yet resist rotational movement of the cap 11 within the tube 14 as shown in the Swiss '467 Patent.

With respect to claim 22 which is dependent on claim 21, this claim adds the limitation a cover for said compartment. As set forth above with respect to claim 3, the Swiss '467 Patent discloses cover 17 over tube 14, thus rendering this claim obvious in view of the previously discussed combination.

With respect to claim 23, which is dependent upon claim 21, this claim merely adds the limitation that there is a first product in said first compartment. Again, the Swiss '467 Patent discloses a cosmetic product in the nature of lipstick in the first compartment. Thus, this limitation adds nothing to the patentability of claim 21 and is rendered obvious by the combination of the references previously discussed.

With respect to claim 24, this claim is dependent upon claim 23 which is dependent on claim 21 and just recites that the first product is a cosmetic. As set forth above, what is disclosed in the Swiss '467 Patent is a cosmetic in the nature of lipstick and therefore, this limitation adds nothing patentable to claim 24 and in my opinion is rendered obvious by the combination of the same references.

Now going to claim 25 which is dependent upon claim 24 which is dependent on claim 23 which is dependent on claim 21, this merely adds the limitation that the cosmetic is lipstick. As stated above, this is specifically disclosed in the Swiss '467 Patent and does not overcome the obviousness of what is taught by the Swiss '467 Patent in combination with the Schultz '849 Patent.

Claim 26 is dependent upon claim 21 and claims that there is a second product in the receptacle. As set forth above, with respect to the claims dependent upon claim 1, the Swiss '467 Patent clearly shows a second receptacle and that second receptacle includes a second product, specifically, nail polish. Thus, this claim is rendered obvious over the combination of the Swiss '467 Patent and the Schultz '849 Patent.

Now referring to claim 27 which is dependent upon claim 26 which is dependent upon claim 21, claim 27 merely adds that the second product is nail polish. As set forth with respect to claim 26, this is specifically disclosed in the Swiss '467 Patent and for the same reasons set forth above this claim is obvious over the same combination of references.

Finally, claim 28 which is dependent upon claim 27 which is dependent on claim 26 which is dependent upon claim 21, merely states that the cap supports a brush for removable insertion in the receptacle. Again, this is disclosed in the Swiss '467 Patent wherein, the bottle 10 containing nail polish, is releasably engaged to cap 11 and there is brush 10 which is supported by cap 11 which is placed into bottle 10. Thus, this claim is also rendered obvious in view of the combination of references set forth above.

With respect to claims 11-18 and 29-33, I render no opinion with respect to their validity in that, it is my understanding that the multi-purpose containers sold by WWP which are alleged to infringe, do not practice the invention set forth in those claims.

## VIII.  NONINFRINGEMENT

I have also been requested to provide an opinion on whether WWP's unglued multi-purpose container infringes any claim of the Bengis '179 Patent. After reading all of the provided information and analyzing the physical samples provided I've drawn the following conclusions regarding infringement. As set forth above, it is my opinion that the WWP unglued container, although it physically has the features of splines and ribs molded into the product, does not include splines and ribs that allow the same to reasonably couple, as defined by the Court, the cap to the open base of the compartment as recited in claim 1. Likewise, the WWP allegedly infringing unglued product does not have a cap having an outer surface and an open base which includes a interior surface where the outer surface of the cap and the interior surface of the open base are shaped to permit removable coupling of the cap with the compartment, as defined by the Court, as set forth in claim 19. Finally, the WWP allegedly infringing unglued product does not have an open base which includes an interior surface having a preselected shape and a cap having an outer surface having a shape corresponding to the preselected shape of the interior surface of the open base for releasably coupling, as defined by the Court, the cap to the compartment as set forth in claim 21. I have been advised by counsel that if an independent claim is not infringed, a dependent claim cannot be infringed. Since it is my opinion that independent claims 1, 19 and 21 are not infringed, none of the claims dependent on any of these claims can be infringed. The following is the basis for my opinions:

1. I have reviewed the Court's opinion of June 22, 2006, granting summary judgment of noninfringement with respect to any of WWP's product that glued the cap to the open base of the first compartment. In light of this decision, the only issue is whether any of WWP's unglued product falls within the scope of any of the claims of the '179 Patent. In this regard the three independent claims 1, 19 and 21 include the following language

respectively:  releasably couple, removable coupling and releasably coupling.  After reading the Court's decision of June 22, 2006, it is my understanding that each of these terms requires that the fastening between the open base and cap allows for the easy and consistent removal and replacement of the cap from the base when desired.  This permits the interchangeability of different components as described in the Bengis '179 Patent. Specifically, as Bengis states in his patent:  "the present invention has been developed to improve over such prior art containers by providing a lipstick dispenser that may mate with one of a variety of interchangeable attachments." (the '179 Patent, col. 1, ll. 24-27.) Based upon my analysis of WWP's product the fastening between the open base and cap does not allow for the easy and consistent removal of the cap when desired.

2.  The reason I come to this conclusion is because the force needed to pull the bottle from the open end of the lipstick container far exceeds that which a pinch grip can deliver.  A pinch grip is defined as a grip between the index finger and thumb and/or the middle finger.  Typically these grips provide between 2 and 5 pounds of clamping force, which for this given design is not nearly sufficient to pull both products apart.  Conversely the force required to pull apart the lipstick cover is a fraction of a pound and easily demonstrates the ergonomic differences.  During the course of my investigation I performed some rudimentary pulling force measurements on some unglued samples.  I used a machine called an Instron, which is designed to measure such forces.  The force required exceeded the 10 pound load cell limit.

3.  The other potential means to separate the two components, without the use of tools, would be to use a power grip.  A power grip is defined in this context as a grip that has one's fingers wrapped around the object.  Using a power grip I was able to separate the

two components.  But, by readily accepted Anthropometric/Ergonomics Charts, I would be considered physically in the 95th percentile of the population.  If one was to purposefully design a product, for such removal, they should be designing for the 5th percentile of the population.  It is my conclusion that the force required to pull apart both devices is sufficiently large to prohibit its practical use.  I would consider the level of interference fit equivalent to a glued product.

Therefore, in light of the foregoing, it is my opinion that none of the claims of the '179 Patent are infringed.

## VIII.  **CONCLUSION**

I reserve the right to supplement this report at a later time including, if necessary, conducting any tests necessary to the extent any further issues arise.

December 12th 2007

Dated: _____        _____

                                    John Kawand