UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

JOHN JOSEPH BENGIS, an individual,                     :

                              Plaintiff,        :        08 CV 4237 (JSR)

                       v.                    :

                                          :        ECF CASE

RICHARD MOSS, ESQ., an individual, and      :
KRAMER LEVIN NAFTALIS & FRANKEL LLP, :

                              :

                        Defendants.        :

——————————————————————— x

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

Table of Contents

Page

Preliminary Statement.................................................................................................1

   Point 1.  PLAINTIFF'S CLAIM ACCRUED WHEN HE RELIED ON
          DEFENDANTS' ALLEGEDLY ERRONEOUS ADVICE IN 2000...................3

   Plaintiff's Reliance on Defendants' Advice .......................................................3

   Plaintiff's "Actionable Injury".........................................................................4

   Point 2.  NEW YORK DOES NOT APPLY A DISCOVERY RULE IN
          MALPRACTICE CASES, THE RULE PLAINTIFF IN ESSENCE
          URGES ...............................................................................................9

Conclusion ...............................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Ackerman v. Price Waterhouse,*
    84 N.Y.2d 535, 541-43, 620 N.Y.S.2d 318 (1994)............................................. Passim

*Kerbein v. Hutchinson,*
    30 A.D.3d 730, 732, 816 N.Y.S.2d 591 (3d Dep't 2006)............................................8

*McCoy v. Feinman,*
    99 N.Y.2d 295, 300-01, 305, 755 N.Y.S.2d 693 (2002).........................................8, 9

*Pearson v. Pathmark Stores, Inc.,*
    07 CV 2183, 2008 U.S. Dist. LEXIS 46620, at *1 n.1
    (E.D.N.Y. June 17, 2008) ...............................................................................2 n.2

*Shumsky v. Eisenstein,*
    96 N.Y.2d 164, 167-68, 726 N.Y.S.2d 365 (2001).....................................................6

### STATUTES

35 U.S.C. §154(a)(2)......................................................................................7

CPLR § 214.6.............................................................................................1, 9

Fed. R. Civ. P. 12(d) ........................................................................................2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x

JOHN JOSEPH BENGIS, an individual,                  :
                                                    :
                            Plaintiff,              :        08 CV 4237 (JSR)
                    v.                              :
                                                    :        ECF CASE
RICHARD MOSS, ESQ., an individual, and              :
KRAMER LEVIN NAFTALIS & FRANKEL LLP, :
                                                    :
                            Defendants.             :

-------------------------------------------------- x

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Richard Moss ("Moss") and Kramer Levin Naftalis & Frankel LLP ("Kramer

Levin") respectfully submit this Reply Memorandum of Law in support of their motion to

dismiss the Complaint on the ground that its four claims for relief are barred by the applicable

three-year statute of limitations provided by New York Civil Practice Law and Rules § 214.6.

### Preliminary Statement

In their Memorandum dated June 13, 2008, in support of their motion to dismiss ("Def.

Mem."), defendants showed that plaintiff Bengis's claim for malpractice was barred not later

than September 17, 2005, three years after the issuance to plaintiff, on September 17, 2002, of

the '179 Patent covering a cosmetic container (Def. Mem. at 5).  Defendants further showed that

plaintiff's three other causes of action simply applied different labels to the same malpractice

claim, and thus are barred by the same three year statute of limitations provided by CPLR §

214.6.  (Def. Mem. at 5-8.)

Plaintiff's Memorandum of Law in opposition to defendants' motion, dated July 10, 2008

("Pl. Mem."), concedes the latter point by its silence.  However, plaintiff claims that his cause of

action for malpractice did not accrue until December 2007 when, in his litigation against World

Wide Packaging ("World Wide"), it was "revealed, for the very first time, that the '179 Patent was more likely than not invalid and unenforceable" based on the prior issued patents defendants supposedly had missed in their alleged patent search. (Pl. Mem. at 9.) Only at this point, plaintiff argues, did he suffer damages resulting from the malpractice that were not "speculative," and thus became able to allege a valid cause of action. (*Id.*)

Contrary to plaintiff's argument, the allegations in the Complaint show that plaintiff sustained actual damage from the alleged malpractice when he first relied in 2000 on defendants' alleged erroneous advice on patentability by expending money in pursuing the patent application. His claim accrued not later than that date, even prior to the filing of the patent application in July 2000, and thus may have been barred as early as July 2003.[1] But since plaintiff alleges that defendants' assurances of patentability continued through issuance of the patent in September 2002, we assume that the running of the statute would be tolled to that date under the continuous representation doctrine. Under this assumption, the claim was barred not later than three years from the September 2002 date. (*See* pp. 3-8, below.)

Plaintiff in essence argues for a discovery rule under which his claim would accrue only when he first discovered the alleged malpractice and his resulting injury. But New York law does not apply a discovery rule in the context of malpractice claims, and hence it is irrelevant when plaintiff learned of the alleged malpractice or resulting injury. (*See* p. 9, below.)[2]

---

[1] We note that, contrary to plaintiff's assumption, the accrual of a malpractice claim does not await the occurrence of damage resulting from the malpractice. Rather, actionable injury occurs, and the claim accrues, when the lawyer's services are rendered. (*See* p. 6, n.4, below.)

[2] Plaintiff submits in opposition to the motion his affidavit, sworn to July 10, 2008, annexed to which as Exh. 3 is an expert report submitted in the World Wide litigation. These documents should be excluded by the Court under Fed. R. Civ. P. 12(d), to avoid converting this motion into one for summary judgment, since they do not present any material necessary to resolution of defendants' motion to dismiss. *See, e.g., Pearson v. Pathmark Stores, Inc.,* 07 CV

2

**ARGUMENT**

Point 1.

PLAINTIFF'S CLAIM ACCRUED WHEN
HE RELIED ON DEFENDANTS'
ALLEGEDLY ERRONEOUS ADVICE IN 2000

Plaintiff's Reliance on Defendants' Advice

Plaintiff alleges that defendants' malpractice consisted of rendering an erroneous opinion,

based on an inadequate patent search, that his invention was patentable. (Compl. ¶¶ 14-15.)

Plaintiff further alleges that he was damaged by relying on that advice:

> Bengis relied on Mr. Moss's representations that the invention was
> novel, unobvious and patentable, and based on such reliance
> Bengis authorized Mr. Moss to file an application with USPTO
> seeking a patent covering the Cosmetic Container.

(Compl. ¶ 16.)[3]

The application was filed on July 31, 2000. (Compl. ¶ 17.) From that point through

issuance of the '179 Patent on September 17, 2002, plaintiff alleges that he continued to receive

assurances of patentability from defendants and continued to rely on such advice by incurring

additional costs:

> Bengis continued to rely on Mr. Moss's assurances that he would
> receive a patent for his Cosmetic Container. As a result, not only
> did he incur the cost of filing for a patent both domestically and
> abroad, but he proceeded to gear up for the manufacturing,
> marketing, offering to sell, and selling the Cosmetic Container.

---

2183 (NG), 2008 U.S. Dist. LEXIS 46620, at *1 n.1 (E.D.N.Y. June 17, 2008). Both plaintiff's
affidavit and the expert's report simply repeat or mirror allegations of the complaint, which, of
course, are deemed true on a motion to dismiss. The one additional fact tendered by plaintiff's
affidavit – his termination of defendants' representation in 2002 – is beside the point since the
Complaint does not allege any acts of malpractice after issuance of the '179 patent in 2002. (Def.
Mem. at 5.)

[3] Defendants accept the truth of plaintiff's allegations only for purposes of their pending
motion, and in fact would contest many of those allegations were the matter to proceed to trial.

3

> Had Mr. Moss not made such assurances, Bengis would have never
> incurred either the patenting costs or the manufacturing, marketing
> and selling costs.

(Compl. ¶¶ 19-20.)

The '179 Patent issued on September 17, 2002. (Compl. ¶ 21.) No act of malpractice is

alleged after such issuance. (Def. Mem. at 5.) It may be inferred from the Complaint that

plaintiff continued to incur further costs in reliance on defendants' earlier advice, including the

costs of instituting his infringement action against World Wide in 2004. Yet, incongruously,

plaintiff argues that he "suffered no injury and no actual damages" as a result of defendants'

alleged malpractice prior to World Wide's demonstration of his patent's invalidity in December

2007. (Compl. ¶¶ 22-27.)

> Accordingly it was in December 2007 that Mr. Bengis suffered, for
> the very first time damages that are actual in nature and not
> speculative.

(Pl. Mem. at 3.) Only then, plaintiff would have it, did he have "all of the facts necessary to

plead a *prima facie* cause of action for illegal malpractice," and hence only then, in December

2007, did his claim accrue. (Pl. Mem. at 3-4.)

Plaintiff's "Actionable Injury"

New York law is squarely to the contrary. Plaintiff suffered actionable injury from the

alleged malpractice, and thus his cause of action accrued, when he received defendants' advice in

2000 that his invention was patentable. In reliance on the advice, he then proceeded to expend

legal fees and expenses to pursue his patent application, *i.e.*, the "patenting costs." (Compl. ¶

20.) A cause of action for malpractice accrues, and the statute of limitations begins to run, when

the client relies on the alleged act of malpractice. *See, e.g.*, *Ackerman v. Price Waterhouse*, 84

N.Y.2d 535, 541-42, 620 N.Y.S.2d 318 (1994).

4

*Ackerman*, on which plaintiff relies (Pl. Mem. at 5, 8), demonstrates the invalidity of plaintiff's argument. The act of accounting malpractice alleged in *Ackerman* was providing the plaintiff-taxpayer with erroneous tax forms and schedules incorporating the defendant's negligent tax advice. The Court of Appeals held that the malpractice claim accrued:

> upon the client's receipt of the accountant's work product since this is the point that a client reasonably relies on the accountant's skill and advice and, as a consequence of such reliance, can become liable for tax deficiencies . . . . This is the time when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court . . . .

84 N.Y. 2d at 541 (citation omitted). The statute began to run on receipt of the work product even though the taxpayer was unaware of the malpractice and it was not known whether the IRS later would audit her tax returns or what damages she might suffer in the event of an audit.

> A malpractice cause of action sounds in tort and, therefore, absent fraud, accrues when an injury occurs, even if the aggrieved party is then ignorant of the wrong or injury.

*Id.*

The alternative of the statute running only if and when the IRS took action against the taxpayer was rejected as failing to provide the requisite certainty in application of the statute:

> The policies underlying a Statute of Limitations – fairness to defendant and society's interest in adjudication of viable claims not subject to the vagaries of time and memory – demand a precise accrual date that can be uniformly applied, not one subject to debate or negotiation.

*Id.* at 542. Therefore, the court adhered to "traditional principles" governing negligence actions which "instruct that plaintiff was injured, and any claim accrued upon performance of the professional's service." *Id.* at 543. The limitation period was to be "measured from the date the

taxpayer receives and, as a consequence, relies on the accountant's advice and/or work product.
*Id.*[4]

    *Ackerman* provides the rule of decision for this case. The cause of action accrued in 2000, when defendants provided their advice to the plaintiff and he relied on it, authorizing defendants to proceed with the patent application, *i.e.*, at some time prior to the filing of the application on July 31, 2000.

    Plaintiff alleges that defendants continued to assure him his invention was patentable through issuance of the '179 Patent in September 2002. (Compl. ¶ 19.) Under the continuous representation doctrine, we assume that the running of the limitations period would be tolled to that date (or perhaps to the date when plaintiff terminated defendants' representation, around the same time). *See Shumsky v. Eisenstein*, 96 N.Y.2d 164, 167-68, 726 N.Y.S.2d 365 (2001). On this assumption, the limitation period expired three years later, in 2005.

    Plaintiff's argument that his cause of action accrued only when World Wide demonstrated invalidity in December 2007 advances the proposition rejected in *Ackerman*. In *Ackerman* the court rejected the notion that the cause of action did not accrue until the IRS ultimately challenged the taxpayer's tax returns, pointing out that there would be great

---

    [4] It is plaintiff's premise that a malpractice claim accrues only when the first non-speculative damage resulting from the malpractice is sustained, regardless of how many years elapse between the act of malpractice and the occurrence of such damage. *Ackerman* is to the contrary, showing that "actionable injury" occurs, and the cause of action accrues, when the professional's services are performed, even if no damage has yet occurred and it is unknown whether any damages will ever occur, *i.e.*, the IRS might never have audited the taxpayer in *Ackerman* and hence the accountant's negligent work might never have been detected. 84 N.Y.2d at 541. The malpractice claim accrues when the services are rendered, and does not await the time when resulting damage is first sustained.

    We do no more than note this additional flaw in plaintiff's argument since the issue need not be resolved on this motion: given the allegations of his Complaint, it is clear that non-speculative damages were sustained, beginning in 2000, resulting from the alleged malpractice.

uncertainty under such a rule because the timing or occurrence of any IRS action could not be predicted, and various stages in the deficiency proceeding once commenced might be urged as the triggering date for the statute. 84 N.Y. 2d at 542-43 (citing eight possible triggers).

The same objection applies here, *a fiorari*. A patent can have a life of up to 20 years. 35 U.S.C. §154(a)(2). Thus, a claim of invalidity might surface any time within those 20 years, either in defense to an infringement action pressed by the plaintiff (as happened here) or by a challenge to the patent brought in the U.S. Patent and Trademark Office or by a third party. Further, if the malpractice cause of action did not accrue until the invalidity claim, it would be debatable whether the cause of action accrued at the point when the invalidity claim was first raised or only when it reached some stage of adjudication.[5]

As noted above (*see* p. 6, n.4), *Ackerman* did not require an expenditure of funds or other damage to demonstrate reliance and actionable injury, but only the receipt of the professional's work product. But this point need not be decided on this motion, for here there were actual damages sustained: the incurring of costs in detrimental reliance on defendants' advice. It is surely not the case that, prior to December 2007, plaintiff "would have failed to make a *prima facie* case because his damages would have been speculative in nature, at that time." (Pl. Mem. at 8.) To the contrary, on whatever date plaintiff sued, his damages would have been precise to the penny, consisting of the costs he had expended to that date in reliance on defendants' advice. The damages might have consisted of a few hundred or thousand dollars in the form of "patenting costs," had the claim been brought before or in the course of the patent application, or they may have reached a higher total, had the claim been brought at a later date

---

[5] The uncertainties are well-illustrated in this case: plaintiff seems unclear even today as to whether World Wide demonstrated the invalidity of his patent (*see* Compl. ¶ 27), or rather only that it was "more likely than not" that the patent was invalid. (Pl. Mem. at 3.)

7

after "manufacturing" and "marketing" costs had been incurred. In either case, the damages would have been "calculable with reasonable certainty." (Pl. Mem. at 7.)[6]

The other cases on which plaintiff relies are no more supportive of plaintiff's position. *See, e.g.*, *McCoy v. Feinman*, 99 N.Y. 2d 295, 300-01, 755 N.Y.S.2d 693 (2002) (accrual date is "the date of injury caused by an attorney's malpractice," which, in that case, was the date on which a binding stipulation was entered in court);[7] *Kerbein v. Hutchinson*, 30 A.D.3d 730, 732, 816 N.Y.S.2d 591 (3d Dep't 2006) (holding that actionable injury occurred when plaintiff became irrevocably bound to a settlement agreement, at which point plaintiff had detrimentally relied on her attorney's erroneous advice).

Thus, accepting *arguendo* plaintiff's dubious proposition that "actionable injury" does not occur until non-speculative damages are sustained, such damages were sustained when plaintiff first expended money in reliance on defendants' allegedly erroneous advice in 2000. Continuous representation, we assume, tolled the running of the limitations period until 2002, meaning that the period expired in 2005, three years before plaintiff sued in 2008.

---

[6] The damages would not have included any sum attributable to plaintiff's loss of the "right to enforce my patent," *i.e.*, "to prevent others from making, selling or using my invention as embodied in the '179 patent" (Bengis Aff. ¶ 25.) Based on plaintiff's allegations, plaintiff could never have received a valid patent for his invention, due to the prior-issued patents, and thus would never have been able to enforce his patent.

[7] Later in its opinion the court states that when the stipulation was entered, "plaintiff's damages were . . . then sufficiently calculable to permit plaintiff to obtain prompt judicial redress of that injury," thereby deeming plaintiff at that point to have "a complete cause of action." *McCoy*, 99 N.Y.2d at 305. Under the facts of that case, the entire damage was sustained on the date of the binding stipulation. The court does not imply that if some damage was sustained on that date, and additional damage was sustained on a later date, that it would be the later date on which the cause of action would accrue.

Point 2.

## NEW YORK DOES NOT APPLY A DISCOVERY RULE IN MALPRACTICE CASES, THE RULE PLAINTIFF IN ESSENCE URGES

We accept, for purposes of this motion, that plaintiff did not know – and through reasonable diligence could not have known – until December 2007 that defendants had committed malpractice or that plaintiff had suffered any injury as a result of the malpractice. Plaintiff urges that the statute only began to run on that date, when he first discovered defendants' alleged malpractice, and entitled him to sue for all damages sustained up to that date. But New York case law plainly shows that, long before plaintiff's 2007 discovery, the statute had run on his malpractice claim based on defendants' 2000-02 advice, given plaintiff's detrimental reliance on that advice from 2000 forward. The statute expired not later than 2005, when plaintiff was still "ignorant of the wrong or injury." *Ackerman*, 84 N.Y. 2d at 541; *see also* Def. Mem. at 4.

While some would view this result as unfair, it is not unusual under New York law, which does not have a discovery rule for legal malpractice, *i.e.*, it does not delay accrual of a claim until plaintiff discovers, or could with reasonable diligence have discovered, the malpractice (or resulting injury). Striking the proper balance between fairness to potential malpractice plaintiffs and the interests served by a statute of limitations is a job for the New York State Legislature, and not for the courts, let alone a federal court applying state law. *See McCoy v. Feinman*, 99 N.Y. 2d 295, 301 n.2 (2002) ("If there is injustice in the operation of CPLR §214(6), the Legislature has not seen fit to ameliorate the statute's effects by enacting a date of discovery rule . . . .").

9

<u>Conclusion</u>

For the foregoing reasons, and the reasons cited in defendants' original motion papers,

defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: New York, New York
      July 17, 2008

                        Respectfully submitted,

                        Kramer Levin Naftalis & Frankel LLP

                        By:   /s/ Thomas H. Moreland
                            Thomas H. Moreland (TM-3927)

                        1177 Avenue of the Americas
                        New York, New York  10036
                        (212) 715-9100

                        Attorneys for Defendants

10